IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

WILLIAM CARY SALLIE,       :
                               :
        Petitioner        :
                               :
vs.                            :
                               :     CIVIL ACTION NO. 5:11-CV-75 (MTT)
CARL HUMPHREY, Warden,   :
                               :
        Respondent    :
                               :

_____

# ORDER

      Before the Court is Respondent's Motion to Dismiss Petition for Writ of Habeas Corpus as Untimely.   The Court agrees that Petitioner William Cary Sallie did not timely file his petition.   However, the petition is not subject to dismissal because further development of the record is necessary to resolve Sallie's claim that he is entitled to equitable tolling of the statute of limitations.

## I.    PROCEDURAL HISTORY

      On March 30, 1991, a jury convicted Petitioner William Cary Sallie of malice murder, burglary, aggravated assault, two counts of kidnaping with bodily injury, and possession of a firearm during the commission of a felony.   *Sallie v. State*, 269 Ga. 446, 446 n.1, 499 S.E.2d 897, 898 n.1 (1998).   The jury recommended death for the murder conviction and the trial court imposed a life sentence for each kidnaping count, twenty years for burglary, twenty years for aggravated assault, and five years for possession of a firearm during the commission of a felony.   *Id.*   The Georgia Supreme Court reversed Sallie's convictions because "one of Sallie's trial lawyers was laboring under a conflict of interest" and remanded the case for a new trial.   *Id.* at 446.

On June 26, 2000, a grand jury again indicted Sallie, this time for malice murder, felony murder, burglary, aggravated assault, two counts of kidnaping with bodily injury, and possession of a firearm during the commission of a felony. *Sallie v. State*, 276 Ga. 506, 506 n.2, 578 S.E.2d 444, 448 n.2 (2003). After a change of venue to Houston County, a jury again found Sally guilty and recommended a sentence of death for the malice murder on March 5, 2001. *Id.*

On April 3, 2001, Sallie filed a motion for new trial, which was denied on June 17, 2002. (Doc. 8, at 1). The Georgia Supreme Court affirmed Sallie's conviction and sentence on March 24, 2003. *Sallie*, 276 Ga. at 506, 578 S.E.2d at 448.

Sallie filed a petition for certiorari in the United States Supreme Court, which was denied on October 6, 2003. *Sallie v. Georgia*, 540 U.S. 902 (2003). Sallie petitioned for rehearing, and that petition was denied on December 8, 2003. *Sallie v. Georgia*, 540 U.S. 1086 (2003). On December 10, 2003, the Georgia Supreme Court transmitted the remittitur to the trial court. (Doc. 8, at 1).

Sallie filed his state habeas corpus petition in the Superior Court of Butts County on October 14, 2004. (Doc. 8, at 2). Following an evidentiary hearing, the Court denied the petition on June 29, 2009. (Doc. 9, at 4). On January 14, 2011, the Georgia Supreme Court denied Sallie's Application for Certificate of Probable Cause to Appeal. (Doc. 9, at 4).

Sallie filed his Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 in this Court on February 28, 2011. (Doc. 1).

## II.   DISCUSSION

### A.   The statute of limitations under 28 U.S.C. § 2244(d)

The Antiterrorism and Effective Death Penalty Act (AEDPA) "imposes a one-year statute of limitations on all federal habeas corpus petitions."   *San Martin v. McNeil*, 633 F.3d 1257, 1265 (11th Cir. 2011).   The relevant provisions of 28 U.S.C. § 2244(d) are:

> (1)   A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.   The limitation period shall run from the latest of--
>
> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> ....
>
> (2)   The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The Respondent argues that under the clear language of the statute, a state court judgment becomes final, for AEDPA purposes, upon "the conclusion of direct review," which, in this case, was October 6, 2003, the date the United States Supreme Court denied Sallie's petition for certiorari.   Because Sallie did not file by October 6, 2004,[1]

---

[1] AEDPA's one year "limitations period should be calculated according to the 'anniversary method,' under which the limitations period expires on the anniversary of the date it began to run." *Downs v. McNeil*, 520 F.3d 1311, 1318 (11th Cir. 2008) (citing *Ferreira v. Sec'y Dep't of Corr.*, 494 F.3d 1286, 1289 n.1 (11th Cir. 2007)).   "The anniversary date is the 'last day to file even when the intervening period includes the extra leap year day.'"   *White v. Conway*, No. 9:07-CV-1175, 2011 WL 1315912 (N.D.N.Y. Mar. 31, 2011) (quoting *United States v. Hurst*, 322 F.3d 1256, 1260 (10th Cir. 2003) (quoting *United States v. Marcello*, 212 F.3d 1005, 1008-09 (7th Cir. 2000))).

either a federal petition for writ of habeas corpus or an "application for State post-conviction" relief, which would have tolled the statute of limitations, he cannot now seek federal habeas relief. 28 U.S.C. § 2244(d)(2).

Sallie responds that Georgia law determines when a state court judgment becomes final for purposes of 28 U.S.C. § 2254, and, under Georgia law, his conviction became final only when the trial court received the remittitur on December 10, 2003. Because AEDPA's clock did not start until December 10, 2003, Sallie argues that his October 14, 2004 state habeas petition tolled AEDPA's statute of limitations, leaving him 57 days under AEDPA. Therefore, he timely filed his federal habeas petition on February 28, 2011, 45 days after his state habeas action concluded and well within the time remaining under AEDPA.

In the alternative, Sallie contends that the State of Georgia created an impediment to the filing of his federal petition and, pursuant to § 2244(d)(1)(B), AEDPA's clock did not start until that impediment was removed. This argument is also based on Georgia's final judgment rule. Salle contends he could not file his federal habeas petition until he had exhausted his state court remedies, and he could not file his state habeas petition to pursue those remedies until the remittitur had been returned to the trial court. In other words, Georgia's final judgment rule prevented him from filing his state habeas petition until December 10, 2003, the date the trial court received the remittitur. Thus, before December 10, 2003, Sallie could not file his state court habeas petition to toll AEDPA's statute of limitations. Nor could he file his federal petition because he had not exhausted his state court remedies. Thus, Sallie contends, the State of Georgia effectively created an unconstitutional impediment to the filing of his federal habeas petition, an impediment that was not removed until December 10, 2003 when his conviction became final under

Georgia law.   Therefore, pursuant to 28 U.S.C. § 2244(d)(1)(B), the one-year statute of limitations did not begin to run until December 10, 2003, and his October 6, 2004 state habeas petition tolled AEDPA's statute of limitations.

1. <u>Federal law, rather than state law, determines when a state court conviction becomes final under 28 U.S.C. § 2244(d)(1)(A).</u>

Sallie's contention that a Georgia state court conviction is not final until the remittitur has been returned to the trial court is based upon his interpretation of the Georgia Supreme Court's decision in *Horton v. Wilkes*, 250 Ga. 902, 302 S.E.2d 94 (1983), an interpretation which Respondent does not dispute.   However, it is at least debatable whether Sallie reads *Horton* properly.

In *Horton*, the petitioner filed his petition for writ of habeas corpus on December 30, 1982 to avoid the application of changes in Georgia's habeas corpus law that were to become effective January 1, 1983.   However, when Horton filed his habeas petition, the United States Supreme Court had not yet ruled on Horton's petition for certiorari. Accordingly, the Respondent moved to dismiss the petition on the grounds that the conviction was not final and therefore the petition had been prematurely filed.   Because the Supreme Court had not ruled on the petition for certiorari, Horton's case was still in direct review, and thus his habeas petition was premature under any meaning of final judgment.   However, in affirming the trial court's dismissal of the petition, the Georgia Supreme Court stated that "the judgment is not final until the judgment of this court *is made the judgment of the trial court.*"   *Id.* at 903, 24 S.E.2d at 96 (emphasis added). The court did not say directly that judgments become final only upon the return of the remittitur and the authority cited by the court, *Twilley v. Twilley,* 195 Ga. 297, 298, 24 S.E.2d 46 (1943), sheds no further light on the matter.

No case, state or federal, has cited *Horton* for the proposition that judgments become final only upon the return of the remittitur, and the Respondent provides some evidence that practitioners in capital cases do not recognize this rule of finality. Presumably, Sallie would argue that "until the judgment of this court is made the judgment of the trial court" could only mean when the remittitur is returned to the trial court, and that argument would have some logic. Still, this interpretation is not essential to the Georgia Supreme Court's holding; again, under any interpretation of the meaning of final judgment, Horton filed his habeas petition before his judgment of conviction became final. Nevertheless, it is not unreasonable to read *Horton* to mean that convictions become final only when the remittitur is returned to the trial court.

Assuming, without deciding, that Sallie's reading of *Horton* is correct, the resolution of whether this action was timely filed turns on whether this Court should apply Georgia law to determine when Sallie's conviction became final. Sallie cites *Jimenez v. Quarterman*, 129 S. Ct. 681 (2009) and *Tinker v. Moore*, 255 F.3d 1331 (11th Cir. 2001) for the proposition that "Georgia law is dispositive as to the meaning of finality of judgment in this state for purposes of determining timeliness of a 28 U.S.C. § 2254 petition." (Doc. 8, at 2). Sallie correctly notes that in *Tinker*, the Eleventh Circuit, with no discussion, cited Florida law providing that judgments are final when the mandate is returned to the trial court to determine when a Florida judgment became final for purposes of § 2244(d)(1)(A). *Tinker*, 255 F.3d at 1332. However, the Eleventh Circuit did not *hold* in *Tinker* that federal courts must apply state law to determine when state court judgments become final under § 2244(d)(1)(A). The relevant issue in *Tinker* was whether an application for state post-conviction relief filed within the state statute of limitations, but after AEDPA's statute of limitations had run, tolled AEDPA's statute of limitations. The

Eleventh Circuit ruled that it did not.  The state petition in *Tinker* was filed more than one year after the mandate had been returned to the trial court and thus, whether one looked to federal law or state law, the state petition had not been filed within AEDPA's one-year statute of limitations.  The question of whether state law or federal law determines when a state judgment becomes final for purposes of AEDPA simply was not at issue in *Tinker.*

Moreover, two years after the Eleventh Circuit's decision in *Tinker,* the United States Supreme Court, in *Clay v. United States*, 537 U.S. 522 (2003), made clear that federal law, not state law, determines when a state court conviction is final under § 2244(d)(1)(A).  In *Clay*, the Court addressed the issue of "finality" for purposes of federal prisoners seeking habeas relief.  The Court rejected "the issuance of the appellate court mandate as the triggering date" and held that the "judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction."  *Id.* at 525.  The Court explained that "[f]inality is variously defined [and] like many legal terms, its precise meaning depends on context."  *Id.* at 527.  However, when the "relevant context is postconviction relief, . . . finality has a long-recognized, clear meaning: Finality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for writ of certiorari, or when the time for filing a certiorari petition expires."  *Id.*

To reach its conclusion regarding finality for federal prisoners, the Court compared the language in § 2255 to that of § 2244—the statute at issue in this case.  The Court observed that "[t]he Courts of Appeals have uniformly interpreted 'direct review' in § 2244(d)(1)(A) to encompass review of a state conviction by this Court."  *Id.* at 528 n.3. When comparing § 2255's one-year limitations period with that of § 2244, the Court explained:

> [O]ne can readily comprehend why Congress might have found it
> appropriate to spell out the meaning of "final" in § 2244(d)(1)(A) but not in
> § 2255. Section 2244(d)(1) governs petitions by state prisoners. In that
> context, a bare reference to "became final" [as exists in § 2255] might have
> suggested that finality assessments should be made with reference to state
> law rules that may differ from the general federal rule and vary from State to
> State. The words "by the conclusion of direct review or the expiration of
> the time for seeking such review" **make it clear that finality for the
> purpose of § 2244(d)(1)(A) is to be determined by reference to a
> uniform federal rule.**

*Id.* at 530-31 (emphasis added).

Moreover, in cases decided since *Tinker*, the Eleventh Circuit has not referenced state law to determine the meaning of finality under § 2244(d)(1)(A). For example, in *Kaufman v. United States*, 282 F.3d 1336 (11th Cir. 2002), the Eleventh Circuit addressed the time in which the statute of limitations begins to run in the context of a federal habeas corpus petition brought by a federal prisoner under § 2255. The Court determined that a judgment of conviction becomes final on the date the United States Supreme Court issues a decision on the merits or denies certiorari or, if no petition for certiorari is filed, the date on which the defendant's time to file such a petition expires. *Id.* at 1339. The Court also recognized the similarity between the language in § 2255 and § 2244(d)(1)(A) and stated "that there is no indication whatsoever in the AEDPA that Congress intended to treat state and federal habeas petitioners differently with regard to the period of limitation." *Id.* at 1339.

In *Bond v. Moore*, 309 F.3d 770 (11th Cir. 2002), the Eleventh Circuit, citing *Kaufman,* determined that the one-year limitations period in § 2244(d)(1)(A) starts to run 90 days after the entry of judgment by the Florida Supreme Court because defendants have 90 days within which to file petitions for writ of certiorari. *Id.* at 774. The Eleventh Circuit came to the same conclusion in *Nix v. Sec'y for the Dep't of Corr.,* 393 F.3d 1235

(11th Cir. 2004), where the Court held that a petitioner's conviction became final, for federal habeas purposes, after the expiration of the 90-day period in which he could have sought certiorari review in the United States Supreme Court.  *Id.* at 1236-37.

In *Pugh v. Smith*, 465 F.3d 1295 (11th Cir. 2006), the Court, when discussing finality in relation to a § 2254 habeas petition filed by a Georgia prisoner, explained that "[i]f a prisoner petitions the Supreme Court for a writ of certiorari, his conviction becomes final when the Supreme Court denies the petition or affirms the conviction."  *Id.* at 1299 (citing *Clay*, 537 U.S. at 527).   However, if the petitioner does not petition for certiorari, his "conviction becomes final when the time for filing that petition expires."  *Id.* (citing *Bond*, 309 F.3d at 774).

In *Chavers v. Sec'y, Fla. Dep't of Corr.*, 468 F.3d 1273 (11th Cir 2006), the Eleventh Circuit, citing *Bond*, explained that a judgment becomes final under § 2244 "on the date in which the United States Supreme Court either issues a decision on the merits of petitioner's direct appeal or denies certiorari, or after the expiration of the 90-day period in which the petitioner could have filed a petition for a writ of certiorari."  *Id.* at 1274-75. The Court determined that, in cases in which the petitioner does not file a petition for writ of certiorari in the United States Supreme Court, "the entry of judgment [by the appellate court], and not the issuance of the mandate, is the event that starts the running of time for seeking Supreme Court review."  *Id.* at 1275.

In *Drury v. United States*, 507 F.3d 1295 (11th Cir. 2007), a § 2255 action, the Eleventh Circuit addressed the issue of whether the filing of a motion for reconsideration of the Supreme Court's denial of certiorari affects the finality of the judgment:

> We now join our sister circuits and, consistent with the Supreme Court's decision in *Clay*, hold that finality attaches when the Supreme Court denies a habeas petitioner's petition for certiorari review.   [The petitioner's] filing of

> a motion for reconsideration of the Supreme Court's decision did not affect the disposition of his case in the Supreme Court, and we see no reason why such a motion would toll the time for filing a § 2255 motion. Upon the denial of his certiorari petition, Drury's conviction was final for purposes of the AEDPA's limitations period.

*Id.* at 1297.

Finally, in *San Martin v. McNeil*, 633 F.3d 1257, the Eleventh Circuit, again citing *Clay*, acknowledged that "the Supreme Court has held that '[f]inality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for writ of certiorari, or when the time for filing a certiorari petition expires'." *Id.* at 1265 (quoting *Clay*, 537 U.S. at 527). Thus, the Court continued, "AEDPA's one-year limitation period begins to run from the day after the Supreme Court enters an order denying the petition for writ of certiorari." *Id.* at 1266 (citing *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001)). Consistent with the holding in *Drury*, the Court explained that the filing of any "motion for reconsideration of the Supreme Court's decision does not prolong the conclusion of direct review." *Id.* (citing *Drury,* 507 F.3d at 1297).[2]

Thus, even if *Tinker* could once have been considered precedent for the principle that federal courts must look to state law to determine finality under § 2244(d)(1)(A), it has been "undermined to the point of abrogation." *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008).

Nor does *Jimenez* support Sallie's position. In fact, *Jimenez* reinforces the holding in *Clay* and makes clear that a judgment is final under § 2244(d)(1)(A) when the

---

[2] All circuits have resolved the question of finality by reference to federal law rather than state law to determine when a state court conviction becomes final for purposes of § 2244. *Trapp v. Spencer*, 479 F.3d 53 (1st Cir. 2007); *McKinney v. Artuz,* 326 F.3d 87 (2d Cir. 2003); *Morris v. Horn*, 187 F.3d 333 (3d Cir. 1999); *Lyons v. Weisner*, 247 F. App'x 440 (4th Cir. 2007); *Roberts v. Cockrell*, 319 F.3d 690 (5th Cir. 2003); *Bachman v. Bagley*, 487 F.3d 979 (6th Cir. 2007); *Teas v. Endicott*, 494 F.3d 580 (7th Cir. 2007); *Smith v. Bowersox*, 159 F.3d 345 (8th Cir. 1998); *Hemmerle v. Schriro*; 495 F.3d 1069 (9th Cir. 2007); *Davidson v. McKune*, 191 F. App'x 746 (10th Cir. 2006).

Supreme Court rules on a petition for certiorari, or when the time for filing a petition for

certiorari has expired.   The Supreme Court stated:

> With respect to postconviction relief for federal prisoners, this Court has
> held that the conclusion of direct review occurs when "this Court affirms a
> conviction on the merits on direct review or denies a petition for a writ of
> certiorari."   We have further held that if the federal prisoner chooses not to
> seek direct review in this Court, then the conviction becomes final when "the
> time for filing a certiorari petition expires."   In construing the similar
> language of § 2244(d)(1)(A), we see no reason to depart from this settled
> understanding, which comports with the most natural reading of the
> statutory text.   As a result, direct review cannot conclude for purposes of
> § 2244(d)(1)(A) until the "availability of direct appeal to the state courts,"
> and to this Court, has been exhausted.

*Jimenez,* 129 S. Ct. at 685 (citations omitted).

In sum, it is clear that federal law determines when a state court conviction

becomes final under § 2244(d)(1)(A).   Thus, Sallie's conviction became final when the

Supreme Court denied his petition for certiorari on October 6, 2003 and he had one year

from that date to file his § 2254 petition.   He could have tolled the statute of limitations if

he had properly filed his state habeas corpus petition within that year.   He did not do so

and, therefore, under § 2244(d)(1)(A), his federal habeas corpus petition is untimely.

2. <u>Georgia's final judgment rule, even if different than federal law, is not an
   impediment under 28 U.S.C. § 2244(d)(1)(B).</u>

Sallie's alternative argument has, on its face, some logic.   He claims he could not

file his federal habeas petition until he had exhausted his state court remedies.

However, according to his interpretation of *Horton*, he could not file a state court petition

to enforce those remedies until December 10, 2003, the date the remittitur was returned

to the trial court.   If his AEDPA clock began running October 6, 2003, and if *Horton*

prevented him from filing his state petition which in turn prevented him from filing his

federal petition, the state effectively created an impediment to the filing of his federal

petition.   Accordingly, Sallie argues, pursuant to 28 U.S.C. § 2244(d)(1)(B), his one-year AEDPA statute of limitations did not start to run until December 10, 2003, the date the impediment was removed.   Even if Sallie is correct in his interpretation of *Horton*, which as discussed above is debatable, and notwithstanding the logic of Sallie's argument, the Court concludes that a state rule regarding finality of convictions is not the sort of "impediment" envisioned in § 2244(d)(1)(B).

The "impediment" contemplated by § 2244(d)(1)(B) "requires state action that both 'violated . . . the Constitution or laws of the United States' and 'prevented [the prisoner] from filing' his federal petition."   *Johnson v. Fla. Dep't of Corr.*, 513 F.3d 1328, 1331-32 (11th Cir. 2008) (quoting 28 U.S.C. § 2244(d)(1)(B)); *see also Arthur v. Allen*, 452 F.3d 1234, 1249 (11th Cir. 2006) (explaining that if a petitioner is "prevented from filing his habeas corpus petition as a result of 'illegal state action,' the limitation period will not begin to run until the state impediment is removed").   Sallie broadly claims that the *Horton* impediment violated his "First, Fifth, Eighth and Fourteenth Amendment rights to due process, to access to the courts, to petition the government for relief from redress, to the equal protection of the laws and to be free from cruel and unusual punishments." (Doc. 17, at 3).   However, Sallie cites no authority holding that a state court procedural rule can be considered an "impediment" under § 2244(d)(1)(B), and the Court has found none.   Courts that have interpreted this provision have explained that § 2244(d)(1)(B) "is designed to extend the limitations period for cases in which a state directly interferes with a prisoner's ability to file a habeas petition."   *Wood v. Spencer*, 487 F.3d 1, 6 (1st Cir. 2007); *Lloyd v. Vannatta*, 296 F.3d 630 (7th Cir. 2002).   These include situations in which a petitioner is not able to file a habeas petition because he has been denied access to legal materials or instances in which a court has simply refused to file a habeas petition

that has been mailed to it.  *Wood*, 487 F.3d at 6; *Arthur,* 452 F.3d at 1249; *Krause v. Thaler*, 637 F.3d 558 (5th Cir. 2011); *Critchley v. Thaler*, 586 F.3d 318 (5th Cir. 2009); *Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir. 2005) (explaining that "[t]he limited case law applying § 2244(d)(1)(B) has dealt almost entirely with the conduct of state prison officials who interfere with inmates' ability to prepare and file habeas petitions by denying access to legal materials"); *Egerton v. Cockrell*, 334 F.3d 433 (5th Cir. 2003).

Moreover, Sallie's argument runs afoul of Congress' intent and the Supreme Court's directive in *Clay* that federal law, rather than state law, determines when state court convictions become final for purposes of AEDPA.   As discussed above, it is clear that AEDPA's one-year statute of limitations begins to run at the conclusion of direct review notwithstanding a state rule providing that convictions become final at some other point.   Yet, according to Sallie, petitioners could argue that although state rules and laws regarding finality of convictions are not relevant under § 2244(d)(1)(A), those same rules can be considered "impediments" under § 2244(d)(1)(B).   The end effect, of course, would be that contrary state court rules and laws regarding finality of convictions would determine when AEDPA's statute of limitations commences.

Similarly, Sallie's interpretation of *Horton* as an "impediment" to filing his habeas corpus petition is contrary to the Eleventh Circuit's holdings in *Drury* and *San Martin*.   In both cases, the Court ruled that the filing of any motion for reconsideration of the Supreme Court's decision to deny certiorari does not prolong the conclusion of direct review and does not toll the running of the one-year statute of limitations.   *Drury*, 507 F.3d at 1297; *San Martin*, 633 F.3d at 1266.   However, if *Horton* is read to create an "impediment" under § 2244(d)(1)(B), the filing of a motion for reconsideration by a petitioner from the State of Georgia would prolong the conclusion of direct review and

would toll the running of the federal limitations period.

Not only is a state court procedural rule not the type of "impediment" envisioned in § 2244(d)(1)(B), Georgia's final judgment rule did not "prevent" Sallie from "filing" his habeas petitions. "[T]he plain language of the statute makes clear that whatever constitutes an impediment must *prevent* a prisoner from filing his petition." *Lloyd*, 296 F.3d at 633; *Wood*, 487 F.3d at 6-7; *Ocon-Parada v. Young*, No. 3:09CV87, 2010 WL 2928590, at *3 (E.D. Va. July 23, 2010). The First Circuit Court of Appeals explained what it means to "prevent" filing a habeas petition:

> [A] state-created impediment must, to animate the limitations-extending exception, "prevent" a prisoner from filing for federal habeas relief. . . . The verb "prevent," in common parlance, means to frustrate, hold back, or keep from happening. The question, then, is whether [the petitioner] was "prevented" from filing a federal habeas petition . . . .
>
> In answering that question, [petitioner's] available alternatives are of considerable relevance. After all, were someone to erect a barrier across a highway, it would be impossible to decide whether the barrier "prevented" a motorist from proceeding to his destination without credible information as to the width of the highway, the size of the barrier, and the dimensions of the vehicle. If the barrier left ample room for the vehicle to pass, it could not fairly be said to "prevent" the motorist's access to his destination.

*Wood*, 487 F.3d at 7.

Thus, a petitioner must actually be impeded from "filing" his petition, not be impeded from potentially prevailing on the petition. *Shannon*, 410 F.3d at 1087; *Minter v. Beck*, 230 F.3d 663 (4th Cir. 2000); *Ocon-Parada*, No. 3:09CV87, 2010 WL at *3. In a case somewhat analogous to Sallie's, the petitioner claimed that "Virginia's statute of limitations for filing state habeas petitions [was] an unconstitutional impediment because it [was] misleading." *Ocon-Parada*, No. 3:09CV87, 2010 WL at *3. Specifically, the state statute provided for two years to file a state petition, while AEDPA provides only one year. The Court held as follows:

> [Petitioner] must show that he "was prevented from *filing* by" the alleged unconstitutional impediment, which he cannot do. [Petitioner] essentially claims that his misunderstanding of the law and his obligation to exhaust state remedies should forestall the commencement of the federal statute of limitations. These circumstances, however, did not prevent [Petitioner] from filing a federal habeas action. Because ignorance or confusion about the functioning of the federal statute of limitations does not qualify as an "impediment to filing an application created by State action in violation of the Constitution or laws of the United States," [Petitioner's] argument for a belated commencement of the limitation period under 28 U.S.C. § 2244(d)(1)(B) is rejected.

*Id.* (quoting 28 U.S.C. § 2244(d)(1)(B)); *see also Minter*, 230 F.3d at 666 (explaining that even if existing case law means that a habeas corpus petition will be "incapable of producing a successful result, the effort itself was still possible" and, thus, there was no "impediment" to filing the petition itself).

Sallie claims that he "lost more than two months of the statutorily guaranteed one year limitations period" because he could not "properly file" his state habeas action until the Georgia Supreme Court transmitted the remitter to the trial court.   (Doc. 13, at 4) (quoting 28 U.S.C. § 2244(d)(1)).   According to Sallie, such a petition would not have been "properly filed" under § 2244(d)(1) and thus, it would not have tolled the federal limitations period.   (Doc. 17, at 7 n.9).   However, Sallie has pointed to no case in which a Georgia court summarily dismissed a state habeas petition that was filed while a motion for reconsideration of certiorari denial was pending.[3]   Therefore, it is far from clear that any state habeas action Sallie could have filed between October 6, 2003 and December 10, 2003 would not have been "properly filed" under 28 U.S.C. § 2244(d)(2).   The Eleventh Circuit gives "'due deference' to state procedural rules governing filings to determine whether an application for state postconviction relief is 'properly filed' under

---

[3] As explained above, Horton's actual petition for certiorari, not any motion for reconsideration, was pending when he filed his state habeas action.

§ 2244(d)(2), but those rules must be 'firmly established and regularly followed.'"
*Delguidice v. Fla. Dept. of Corr.,* 351 F. App'x 425, 427 (11th Cir. 2009) (quoting *Wade v. Battle,* 379 F.3d 1254, 1260 (11th Cir. 2004) and *Siebert v. Cambpell,* 334 F.3d 1018, 1025 (11th Cir. 2003)).  It is doubtful Sallie's interpretation of the filing requirement in *Horton* has ever been followed.[4]

Sallie hypothetically claims that "if the Georgia Supreme Court were to issue the remittitur more than one year after the denial of certiorari review, a Georgia prisoner in this scenario would forfeit his right to federal habeas review altogether."  (Doc. 13, at 5). This is not the case, however.  Such a petitioner might file a "protective" federal habeas petition in the limited circumstances in which he seeks to preserve his opportunity for federal habeas review because his federal claims may otherwise be time-barred due to his reasonable confusion about the requirements of his state habeas petition.  *See Rhines v. Weber*, 544 U.S. 269 (2005); *Pace v. DiGuglielmo*, 544 U.S. 408, 416-17 (2005); *Heleva v. Brooks*, 581 F.3d 187, 191 (3d Cir 2009); *Hill v. Jones*, 242 F. App'x 633, 637 n.7 (11th Cir. 2007) (explaining that a "prisoner seeking state post-conviction relief might avoid an untimely federal habeas filing as a consequence of efforts to achieve state exhaustion by filing a 'protective' petition in federal court requesting that federal habeas proceedings be stayed and abeyed until state remedies are exhausted"); *Wright v. Oubre*, No. 1:10-CV-2724-WSD, 2011 WL 781547 (N.D. Ga. Mar. 7, 2011); *Ocon-Parada*, No. 3:09CV87, 2010 WL at *3 n.10 (explaining that "where a petitioner has

---

[4] It is worth noting that at least one treatise on Georgia criminal trial practice cites *Horton* for the proposition that "a petition for habeas corpus may not be filed until the conviction is final. Thus, it has been held that such a petition is not valid if it is filed while a petition for writ of certiorari is pending in the United States Supreme Court."  Jack Goger, *Daniel's Georgia Criminal Trial Practice*, § 28-17 (2007 ed.).  Certainly under this interpretation, *Horton* would not have prevented Sallie from filing his state habeas petition at any time after October 6, 2003.

reasonable confusion about his obligation to exhaust his state remedies, but was concerned about the running of the federal statute limitations, the petitioner should file a 'protective petition'").

Sallie, however, contends that a "protective" federal habeas petition and "stay and abey" were not available to him because "[i]n 2003, a federal habeas petition containing unexhausted claims required dismissal for lack of exhaustion." (Doc. 17, at 7). According to Sallie, "even if [he] had filed a 'mixed' federal habeas petition containing both exhausted and unexhausted claims prior to the remittitur issuing in 2003, dismissal of his federal petition would have been mandated by law." (Doc. 17, at 8). Sallie argues that prior to the United States Supreme Court's 2005 decision in *Rhines*, the district courts had no discretion and, pursuant to *Rose v. Lundy*, 455 U.S. 509 (1982), had to dismiss any habeas petitions that contained both exhausted and unexhausted claims. This was not the case. While dismissal without prejudice of such mixed petitions was commonplace[5] when there was no statute of limitations for filing a federal habeas corpus action, this changed with the adoption of AEDPA in 1996. In fact, by 2003, many Circuit Courts had already held that district courts had discretion to stay such mixed petitions. *See Nowaczyk v. Warden*, 299 F.3d 69 (1st Cir. 2002); *Zarvela v. Artuz*, 254 F.3d 374 (2d Cir. 2001); *Palmer v. Carlton*, 276 F.3d 777 (6th Cir. 2002); *Freeman v. Page*, 208 F.3d 572 (7th Cir. 2000); *Brewer v. Johnson*, 139 F.3d 491 (5th Cir. 1998*); Calderon v. U. S. Dist. Ct. for the Northern Dist. of California ex rel. Taylor*, 134 F.3d 981 (9th Cir. 1998).

---

[5] Even under *Rose* dismissal was not mandatory. The Court could allow the petitioner to amend his original habeas petition by deleting the unexhausted claims and allow him to proceed with only the claims that had been exhausted. *Rose*, 455 U.S. at 520.

It is true that prior to 2005, neither the United States Supreme Court nor the Eleventh Circuit Court of Appeals had directly addressed the issue of staying a mixed petition. However, there certainly was every indication that these Courts thought the district courts should have such discretion. *See Duncan v. Walker*, 533 U.S. 167, 182-83 (2001) (Stevens, J., with whom Souter, J. joins, concurring in part and in the judgment) (explaining that "although the Court's pre-AEDPA decision in *Rose v. Lundy* prescribed the dismissal of federal habeas corpus petitions containing unexhausted claims, in our post-AEDPA world there is no reason why a district court should not retain jurisdiction over a meritorious claim and stay further proceedings pending complete exhaustion of state remedies"); *see also Pliler v. Ford*, 542 U.S. 225, 234 (2004) (O'Connor, J., concurring; Stevens, J. and Souter, J., concurring in judgment; and Ginsburg, J. and Breyer, J., dissenting) (explaining that although the Court did not directly address the propriety of the Ninth Circuit's stay and abeyance procedure, the staying of a mixed petition is appropriate when an outright dismissal could jeopardize the timeliness of a collateral attack). In *Thompson v. Sec'y for the Dep't of Corr.*, 320 F.3d 1228 (11th Cir. 2003), the Eleventh Circuit stated that "[e]ven if we assume for the sake of discussion, that the district court had discretion not to dismiss the mixed petition, we conclude there was no abuse of that discretion." *Id.* at 1229. Regarding a district court's discretion to stay a mixed petition, the Court offered "no comment on whether *Rose* compels dismissal of mixed petitions in the AEDPA-era," but noted that other circuits had concluded that a stay of exhausted claims was the preferable course post AEDPA. *Id.* at 1229 n. 3.

In this District, Judge Duross Fitzpatrick, in August, 2004, granted a stay and abeyance in a 28 U.S.C. § 2254 action. *See Hittson v. Upton*, No. 5:01-CV-384 (MTT).

Therefore, contrary to Petitioner's assertions, it is far from clear that any mixed habeas corpus petition would have been summarily dismissed had it been filed in 2003.

Sallie, next argues that "stay and abey" applies only to mixed petitions. Any federal habeas corpus petition he could have filed would have raised only unexhausted claims and thus would have been summarily dismissed because "[a] petition filed in federal court even today which contains only unexhausted claims must be dismissed under *[Rose]*." (Doc. 17, at 9). Sallie probably reads too much into any distinction between so-called mixed and unmixed petitions. As noted, *Rose* predates AEDPA's statute of limitations, and thus the Court was not concerned with potentially time barred federal habeas corpus petitions. The rationale now underlying protective petitions and stay and abey, i.e., to allow a petitioner to preserve his § 2254 rights when it is unclear that he has properly exhausted or properly filed his state claims or relief, applies regardless of whether a petition is mixed or unmixed. See *Heleva v. Brooks,* 581 F.3d 187, 191 (3rd Cir. 2009) (explaining that "a distinction between mixed and non-mixed petitions would make no sense in the context of granting a stay to avoid penalizing a prisoner for reasonable confusion about state court filing requirements").

Nevertheless, Sallie cites a case from the Northern District of Georgia: *Wright v. Oubre*, No. 1:10-CV-2724, 2011 WL 781547 (N.D. Ga. Mar. 7, 2011). First, this assumes that any petition Petitioner could have filed during this period would have contained only unexhausted claims. However, Sallie had already gone through the direct appellate process and presented numerous claims to the Georgia Supreme Court and the United States Supreme Court had denied his petition for certiorari. *See Maples v. Allen*, 586 F.3d 879, 886 (11th Cir. 2009) (explaining that "to properly exhaust a claim, 'state prisoners must give the state courts one full opportunity to resolve any

constitutional issues by invoking one complete round of the State's established appellate review process'") (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)); *see also Castille v. Peoples*, 489 U.S. 346, 350 (1989) (explaining that "once the state courts have ruled upon the claim, it is not necessary for a petitioner 'to ask the state for collateral relief, based upon the same evidence and issues already decided by direct review'") (quoting *Brown v. Allen*, 344 U.S. 443, 448-49 n.3 (1953)).    Sallie possibly had exhausted many of his claims and could have proceeded to federal habeas corpus review with those claims.    *See Walker v. Zant*, 693 F.2d 1087, 1088 (11th Cir. 1982) (explaining that "[t]he exhaustion requirement . . . does not require the prisoner to seek collateral review from the state judiciary of the same issues already raised on direct appeal").

Sallie overlooks an obvious distinction between his situation and that in *Wright*. The petitioner in *Wright* asserted no "'reasonable confusion' about his state habeas filing."    *Wright,* No. 1:10-CV-2724-WSD, 2011 WL at *3.    He knew that his state habeas petition was timely filed and that he was receiving the benefit of § 2244(d)(2)'s tolling provision.    *Id.*    He was merely concerned that he would not be able to timely file his federal habeas corpus petition after he received a ruling in the state habeas proceedings because he had only one day left to file such action under the one year AEDPA filing deadline.    *Id.* at *5.    Sallie, on the other hand, asserts confusion surrounding Georgia's state filing requirements.    He contends that if he filed his state habeas corpus action during the period from October 6, 2003 until December 10, 2003, it would not have been properly filed under *Horton* and, therefore, it would not have tolled the federal limitations period.    (Doc. 17, at 17, n.9).    This is exactly the type of situation discussed in *Pace*, and subsequent cases in the lower courts, in which habeas petitioners have been allowed to file protective petitions in the district courts or in which the counts have indicated that such

petitions might be appropriate. *See Pace*, 544 U.S. at 416-17; *Heleva*, 581 F.3d at 191; *Hill v. Jones*, 242 F. App'x 633, 637 n.7 (11th Cir. 2007); *Colbert v. Head*, 146 F. App'x 340 (11th Cir. 2005).

Finally, if Sallie's interpretation of *Horton* is correct, and if somehow there was a situation in which there was a risk that the return of the remittitur would be delayed to the point that the ability to seek federal relief would be in jeopardy, that would present a seemingly clear case for allowing a protective federal petition. To take Sallie's worst-case hypothetical, if a petitioner were barred by *Horton* from filing a state court petition within one year after his conviction became final under § 2244(d)(1)(A), it is, to this Judge, inconceivable that a federal court would not allow that petitioner to file a protective petition in federal court.

The only other case on which Sallie relies, *Critchley v. Thaler*, 586 F.3d 318 (5th Cir. 2009), does not alter this conclusion. Sallie cites *Critchley* for the proposition that § 2244(d)(1)(B) applies when state action impedes the filing of a state, as opposed to federal, habeas corpus petition. (Doc. 17, at 5). However, in *Critchley*, the county clerk's office actually refused to file the state habeas petition and it was not until after AEDPA's one-year statute of limitations had run that the county clerk's office notified Critchley that it did not file his petition. As the Fifth Circuit noted, Critchley had no way of knowing that his state habeas petition had not been filed, and, therefore, he could not have "avoided the inability to exhaust state remedies by the filing of a protective federal habeas petition." *Critchley*, 586 F.3d at 321. Thus, there was "a nexus between the impediment and the failure to timely file a **federal** petition." *Upchurch v. Thaler*, No. 3:10-CV-0987-D (BK), 2011 WL 1422728 at *3 (N.D. Tex. Jan. 28, 2011) (emphasis added).

In conclusion, *Horton's* final judgment rule, if indeed it is the law of Georgia, is not an "impediment" under § 2244(d)(1)(B). *Horton* does not amount to unconstitutional state action and, even if it did, *Horton* did not prevent Sallie from filing a federal habeas corpus petition.

### B. Equitable tolling of AEDPA's statute of limitations

28 U.S.C. § 2244 also "permits equitable tolling 'when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable with diligence.'" *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000) (quoting *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999)). In *Holland v. Florida*, the United States Supreme Court explained that "a petitioner is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." 130 S. Ct. 2549, 2562 (2010) (quoting *Pace*, 544 U.S. at 418).

In his briefs, Sallie claimed:

> the evidence may show that extraordinary circumstances attended the timing of the filing of Mr. Sallie's state habeas corpus petition and that Mr. Sallie cannot be held responsible for the conduct of attorneys who were not acting as his counsel, and/or that he was abandoned by counsel and the victim of gross negligence for which Mr. Sallie cannot be held constructively responsible.

(Doc. 13, at 8-9).

Because of this, Sallie's counsel (Brian Kammer and Kirsten Salchow, both from the Georgia Resource Center, who also assisted Mr. Sallie at the state habeas level) asserted that, should the Court find it necessary to address equitable tolling, they must withdraw because they are laboring under a non-waivable conflict of interest in relation to this issue. (Doc. 13, at 10). The Court agreed and new counsel has now appeared for

Sallie.   (Doc. 15, 18).

The Court also agrees that the record is insufficient to allow the Court to determine whether equitable tolling is appropriate.   Accordingly, the Court has scheduled an evidentiary hearing for September 12, 2011.   An appropriate scheduling order will be entered by the Court.[6]

**SO ORDERED** this 9th day of June, 2011.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

[6]   Petitioner requested the Court to "hold this case in abeyance with respect to equitable tolling issues surround the filing of Mr. Sallie's state petition, in light of the Supreme Court's recent grant of certiorari review in *Maples v. Allen*, Case no. 10-63."   (Doc. 13, at 14).   The Court declines this request.   In a similar situation, the Eleventh Circuit cautioned against such "needless delays" and stated "that the district court abused its discretion in entering a stay order pending a certiorari ruling by the United States Supreme Court**.**   *Lawrence v. Florida*, 421 F.3d 1221, 1225 n.1 (11th Cir. 2005).   The binding precedent in this Circuit regarding the finality of judgments and equitable tolling is clear and must be applied to the current case. Moreover, it appears that the major issues in *Maples* involve whether a state procedural bar is adequate and, if so, whether the State's conduct could constitute cause to excuse the procedural default.   No such issues exist in this case.