IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| WILLIAM C. SALLIE, | : | |
| *Petitioner*, | : | |
| | : | No.: 5:11-CV-75 (MTT) |
| v. | : | |
| | : | |
| CARL HUMPHREY, Warden, Georgia | : | |
| Diagnostic and Classification Prison, | : | |
| *Respondent*. | : | |
| | : | |

# AMENDED PETITION OF HABEAS CORPUS
# BY A PERSON IN STATE CUSTODY[1]

**CASE POSTURE**

301. This amended petition for a writ of habeas corpus by a person in state custody (the "Amended Petition") is filed pursuant to this Court's November 1, 2011 Scheduling Order. (Doc. 57). The developments thus far in Petitioner's pending application for federal habeas corpus relief warrant a brief rehearsal of the procedural history in this Court to date.

302. Petitioner's federal application was commenced by the filing of a Petition for Writ of Habeas Corpus on February 28, 2011. (Doc. 1). The State filed a Motion to Dismiss the Petition for Writ of Habeas Corpus as Untimely on March 1, 2011. (Doc. 4).

---

[1] In keeping with the model form contained in the Appendix of Forms accompanying the Rules Governing § 2254 Cases in the United States District Courts, as amended effective December 1, 2004 (and version AO 241 (Rev. 10/07) of the form supplied from the website of the United States District Court for the Middle District of Georgia), which states, "Do not argue or cite law. Just state the specific facts that support your claim[,]" the allegations set forth below in this Amended Petition, ordered by the Court on November 1, 2011, are limited to the constitutional headings and the facts entitling petitioner to relief and do not discuss the federal law relevant to Petitioner's claims. Petitioner will seek to present the federal law entitling him to relief in briefing in response to Respondent's answer, which the Court has ordered to be filed thirty (30) days after the filing of the present Amended Petition and to be compliant with Rule 5 of the Rules Governing § 2254 Cases. (Doc. 57). Upon review of the Amended Petition, the Court will address "whether briefs are necessary" with respect to Petitioner's application. (Doc. 60).

1

303.	On March 18, 2011, initial counsel for Petitioner, attorneys for the Georgia Resource Center, filed a Response to that Motion to Dismiss, along with a corrected Petition for Writ of Habeas Corpus (the "Initial Petition").  (Docs. 8, 9).  The State filed its Reply on April 1, 2011 and the Court heard oral argument on the motion on May 4, 2011.  (Doc. 14 (Minute Entry)).

304.	On May 18, 2011, undersigned counsel filed his notice of appearance on behalf of Petitioner.  (Doc. 18).  Shortly thereafter, the Court ordered an evidentiary hearing for Petitioner's assertion, made by initial counsel in its March 18th Response to Respondent's Motion to Dismiss, regarding equitable tolling of the federal limitations period.  (Doc. 20 (Minute Entry for June 1, 2011 telephone conference)).[2]

305.	On June 9, 2011, the Court published its order ruling, inter alia, that Petitioner (a) did not timely file his petition but (b) the petition was not subject to dismissal because further development of the record was necessary to resolve whether Petitioner is entitled to equitable tolling of the statute of limitations.  (Doc. 21).

306.	On June 17, 2011, the Court granted the motion of initial counsel to withdraw due to their conflict preventing their litigation of Petitioner's equitable tolling related claims.  (Doc. 25).  Undersigned counsel remained as the sole counsel for Petitioner in order to litigate the timeliness issues[3] and the merits of Petitioner's federal habeas corpus application.

---

[2] On June 10, 2011, the Court issued a scheduling order for the respective dates for Petitioner and Respondent to disclose witnesses and documents in anticipation of a September 12, 2011 evidentiary hearing.  (Doc. 23).

[3] As set forth in the Corrected Supplemental Petition (Doc. 66) (and in the original Supplemental Petition (Doc. 39)), the two basic headings under which this Court should rule the federal petition timely filed are: (1) equitable tolling and (2) state impediment to filing pursuant to 2244(d)(1)(B) (due, in critical part, to the conduct of Petitioner's prior counsel in these proceedings, the Georgia Resource Center, *before* the Resource Center filed his pro se state habeas petition on October 14, 2004 and, subsequently became his counsel of record in 2005).  Petitioner has underscored the barrier to raising that issue while the Resource Center was his counsel during the period following the filing of his petition in this Court on February 28, 2011 and, in any case, before the Supplemental Petition (Doc.33 (or Doc. 66), at 4 (¶ 125)).

2

307. In light of the July 25, 2011 opinion in <u>Chavez v. Secretary, Fla. Dept. of Corr.</u>, 647 F.3d 1057 (11th Cir. 2011), the Court, on July 26th, <u>sua sponte</u> ordered Petitioner to file a supplemental petition "to state with particularity the facts upon which he bases his claim of equitable tolling" of the statute of limitations. (Doc. 28). Thus the evidentiary hearing scheduled during the June 1st conference was cancelled.

308. The <u>Chavez</u> Court affirmed the district court's denial of an evidentiary hearing relating to that petitioner's equitable tolling claim for an untimely filed federal habeas petition. The <u>Chavez</u> Court relied extensively on <u>San Martin v. McNeil</u>, 633 F.3d 1257 (11th Cir. 2011), block quoting it to underscore the significance of the factual allegations necessary to demonstrate a petitioner's diligent pursuit of his rights and, furthermore, the importance of manifesting such allegations beyond merely pleading them, <u>e.g.</u>, via the petitioner's submission of an affidavit in conjunction with the heightened pleading. <u>Chavez</u>, 647 F.3d at 1069-70 (quoting <u>San Martin</u>, 633 F.3d at 1272).

309. On August 26, 2011, the Court held a telephone conference in connection to Petitioner's Motion for an Extension of Time to File Supplemental Petition (seeking a thirty (30) day extension from the initially ordered filing date of August 15, 2011). Petitioner's motion was granted, setting September 28, 2011 for the filing date of the Supplemental Petition. (Doc. 36 (Minute Entry for August 26, 2011 telephone conference)). The Court, although it had previously not set a date for Respondent to file an answer, further ordered that Respondent would have through October 28, 2011 to file any response to the Supplemental Petition. (<u>Id.</u>).

310. In conjunction with the Supplemental Petition filed on September 28, 2011, the Petitioner also filed his own extensive declaration in support of the Supplemental Petition (Doc.

42) and declarations of eight others (not including undersigned counsel's declaration).[4]

Petitioner also filed Petitioner's Appendix, thereby supplying 37 Attachments directly evidencing elements of Petitioner's diligence in pursuit of his rights. (Doc. 40; Docs. 40-1 – 40-37). Undersigned counsel's declaration in support of the Supplemental Petition included eighteen exhibits manifesting Petitioner's factual allegations. (Doc. 44; Docs. 44-1 – 44-18).

311. While the Supplemental Petition alleged facts for the express purpose of establishing Petitioner's bases for a determination that his federal habeas application was timely commenced, the allegations also provide the factual bases for several constitutional claims that entitle him to federal habeas corpus relief.[5] The Supplemental Petition set forth one of several strands of constitutional violations running through Mr. Sallie's proceedings from before his retrial in February and March 2001, through direct appeals, through state post-conviction and into federal habeas corpus review.

312. Following the Respondent's Answer-Response filed on October 28, 2011 (Doc. 55), the Court entered a Scheduling Order on November 1, 2011 ordering, inter alia, Petitioner to amend his petition. (Doc. 57).[6]

313. On November 28, 2011, Petitioner moved for a ninety (90) day extension to file the Amended Petition, which originally had been scheduled due December 5, 2011. (Doc. 61). Respondent opposed any extension. (Doc. 62). On December 1, 20011, the Court ruled to allow

---

[4] Declarations of the following individuals (in addition to Petitioner's undersigned counsel (Doc. 44)) were filed in support of the Supplemental Petition: Paul E. Bartels (Doc. 41); Stephen C. Bayliss (Doc. 43); Evalee Bohlmann (Doc. 45); Marcus C. Chamblee (Doc. 46); William Cristman (Doc. 47); Thomas J. Killeen (Doc. 48); Seth A. Rosenthal (Doc. 50); and Mary Elizabeth Wells (Doc. 49).

[5] The Supplemental Petition's basic function was not to allege facts or otherwise plead bases for Petitioner's relief from his state judgment. (See Doc. 39 (or Doc. 66), at 4 (¶ 126)). However, certain facts set forth in the Supplemental Petition establish *both* Petitioner's bases for a determination that his application was timely filed *and also* certain violations of Petitioner's constitutional rights.

[6] The order has been revised (with respect to the briefing schedule, which was eliminated) by the November 18, 2011 Order Granting in Part and Denying in Part Respondent's Motion for Reconsideration. (Doc. 60).

Petitioner until January 13, 2012 to file the pleading. (Doc. 64). In so ordering, the Court repeatedly explained that the burden of amending the pending petition did not encompass briefing the claims or otherwise submitting "detailed legal arguments" nor did it entail providing "available evidence." (Doc. 64, at 2, 3). Further, the Court pointed to several instances from the Initial Pleading to signal the basic adequacy of the statement of certain key claims posited therein. (Id. at 2-3).

### CONSTITUTIONAL CLAIMS

314.   This Amended Petition, in accordance with the Court's order "to include every unalleged possible constitutional error" (Doc. 57, at 1), expressly incorporates the allegations made in the Initial Petition and also those set forth in the Supplemental Petition (notwithstanding that the latter pleading was ordered for the limited purpose discussed supra at ¶¶ 307-11). (Doc. 9, at 2-55 (¶¶ 1-116); Doc. 39 (or Doc. 66), at 1-71 (¶¶ 117-300)).

315.   This Amended Petition contains the range of Petitioner's previously unalleged constitutional claims of which the undersigned counsel has made himself aware through the review of the voluminous case files, records, court filings, other materials and meetings with Mr. Sallie concerning Petitioner's cases stemming from events culminating on March 29, 1990 and spanning the decades since.[7]

> **I.   PETITIONER'S RIGHT TO THE ASSISTANCE OF COUNSEL GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WAS VIOLATED BY THE FRAUDULENT, BAD FAITH, DISHONEST, AND DISLOYAL CONDUCT OF ATTORNEYS PRIOR TO HIS CAPITAL MURDER TRIAL**

316.   Petitioner's nominal trial counsel violated his Sixth Amendment right to have the assistance of counsel for his defense at a crucial phase of his capital murder prosecution.

---

[7] Undersigned counsel's investigation and research of Petitioner's case for habeas corpus relief continues. Undersigned counsel may need to seek permission of the Court to amend or modify Petitioner's claims based upon the result of such ongoing investigative and research efforts.

317. As reflected in the conflict between Petitioner and attorneys from the Southern Center for Human Rights that culminated immediately prior to his capital murder jury selection in February 2001, the client—the Petitioner—and his attorneys occupied diametrically opposed positions on the most fundamental strategic aims of Mr. Sallie's defense. (Doc. 39 (or Doc. 66), at 11-19 (¶¶ 143-67)).

318. On the eve of voir dire, the attorneys defrauded Petitioner into giving up his right to determine the basic strategy of his defense. (Id. at 13-17 (¶¶ 151-63)). In gross breach of ethical canons and the law of lawyers, the attorneys coerced Petitioner into a dishonest and disloyal agreement, drafted in bad faith by one of the attorneys. (Id. at 17-19 (¶¶ 164-67)). The attorneys became adverse to Petitioner in the process of their imposition upon him of the central strategic decisions dictating the course of his capital murder trial.

319. The deprivation of good faith counsel to Petitioner at that juncture surrounding the execution of the "Agreement on Legal Representation" (Doc. 40-1) deprived him of *any* assistance of counsel in violation of the Sixth Amendment. The absence of good faith counsel was a pure deprivation of the right to the assistance of counsel.

**II.    PETITIONER WAS DENIED HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL AND ON APPEAL, IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**

320. Due to the foregoing reasons (supra at ¶¶ 316-19), trial counsel, in the alternative to having violated Petitioner's basic right to the assistance of counsel, deprived Petitioner of his right to the *effective* assistance of counsel.

321. One further manifestation of this, at critical times, adverse relationship was the attorneys' obstruction of Petitioner's ability to exercise his right to testify on his own behalf at trial—a right that he had exercised in his original trial in 1991.

322.    Furthermore, trial counsel's other conduct before, during and after trial also violated Petitioner's constitutional rights via multiple, discrete acts and/or omissions.

323.    Trial counsel failed to request from the trial court the provision of expert assistance in a timely and complete manner concerning both the defense's crime scene and its mental health investigations.  Trial counsel ultimately secured the services of a crime scene investigator but, as alleged in the Initial Petition, failed to use her services effectively.  (Doc. 9, at 5 (¶ 11)).

324.    Trial counsel elected not to provide the ultimately retained expert with a sufficient level of information and evidence in the case nor did counsel provide adequate instruction for the application of her expertise to Mr. Sallie's case.  Furthermore, trial counsel failed in preparing and presenting in any manner at trial any qualified expert analysis and opinion concerning the crime scene examination and pathology.

325.    Trial counsel failed to secure and, thus, effectively use at trial the services of a suitable expert with respect to Petitioner's mental health around the time of the events in question on March 29, 1990.

326.    Trial counsel failed to use adequately the range of evidence in their possession prior to trial.  As a result, trial counsel failed to mount any meaningful defense of Petitioner.  This failure occurred both in connection to trial counsel's misuse of (and failure to use) the requisite expert services enumerated above and also in regard to counsel's ineffective use of evidence in the trial.

327.    Trial counsel failed to gather material evidence that they should have sought merely on the basis of their overall case knowledge as informed by the evidence in their possession inherited from the prior trial in 1991.

328. Trial counsel failed to provide effective preparation of Petitioner's witnesses, failed to provide effective examination of the witnesses to elicit relevant, mitigating evidence and failed to limit the scope of their testimony to such relevant, mitigating evidence.

329. Trial counsel failed to give effective assistance in explaining to the jury the evidentiary significance of the exhibits entered into evidence so that the jury would be equipped to consider the evidence accurately during its deliberations.

330. Trial counsel failed to protect Petitioner's rights under the Fourth Amendment to freedom from unreasonable search and seizures and under the Confrontation Clause of the Sixth Amendment.

331. Trial counsel failed to deliver constitutionally effective opening statements and closing arguments in both the guilt/innocence and penalty phases. Trial counsel also failed to object to improper and prejudicial statements during the State's opening and closing arguments in both the guilt/innocence and penalty phases.

332. Trial counsel failed to communicate to Petitioner that the district attorney, prior to jury selection, had sought to work toward a plea agreement to avoid trial. Further, trial counsel failed to provide any advice to Petitioner regarding negotiation concerning a plea agreement to avoid facing his capital murder trial.

333. Trial counsel, who also acted as Petitioner's counsel on his direct appeal, failed in both capacities to take adequate measures to ensure the preservation of evidence presented at trial for the purpose of addressing that evidence during Petitioner's habeas corpus proceedings in state and federal courts.

### III. THE TRIAL COURT'S IMPROPER RULINGS AND OTHER ERRORS DEPRIVED PETITIONER OF A FAIR TRIAL AND RELIABLE SENTENCING IN VIOLATION OF THE FOURTH, FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

334.   The trial court violated Petitioner's rights by failing to excuse for cause several prospective jurors who expressed on voir dire that they would violate Petitioner's constitutional rights in various ways, including, inter alia, by automatically imposing a death sentence upon a conviction for murder, refusing to give the constitutionally requisite consideration to mitigating evidence, and/or refusing to give meaningful consideration, in the event of convicting Mr. Sallie, to sentencing him to life without the possibility of parole.  The violations concerning two veniremembers follow:

- Prospective juror Bobby Harper expressed on voir dire questioning that, for the crime of murder, he could not fairly and conscientiously contemplate a sentence other than death.  Also, Mr. Harper expressed that he could not properly consider mitigating circumstances because of his view that his sentencing determination would be determined by the facts of the offense alone.  The trial court denied trial counsel's motion to excuse Mr. Harper for cause.  (Trial Transcript ("T.") 430).

- Juror Thomas Chasteen expressed on voir dire that he would not fairly and conscientiously consider mitigating evidence and, thereby, that he would violate Petitioner's constitutional rights.  Mr. Chasteen served on Petitioner's jury because the defense had exhausted its peremptories before Chasteen was seated and the trial court, in constitutional error, denied trial counsel's motion to excuse him for cause.  (T. 2079-80).

335.   The trial court violated Petitioner's constitutional rights when it refused to ask and refused to allow trial counsel to ask certain questions of prospective jurors on voir dire.  Trial

9

counsel sought to question prospective jurors in order to ascertain their respective abilities to consider fairly and conscientiously each of the three sentencing options applicable in Mr. Sallie's trial.[8] This violation occurred in connection to five separate categories of voir dire questions. Each category provides an individual basis for habeas relief and these categories, cumulatively, compose a distinct basis for relief concerning the trial court's improper restriction of voir dire:

- Trial counsel sought to ask "categorical mitigation" questions (e.g., T. 79-87, 130, 157-67, 703-08), in order to gather the views of the prospective jurors with respect to their ability to ever consider whole categories of facts as mitigation. The State objected to the requests to ask such questions, which the trial court sustained. (E.g., T. 140, 164, 210-11).

- Trial counsel sought to ask the "Zellmer – life option" question, which contemplates the prospective juror's capacity to consider a sentence of life imprisonment with eligibility for parole even in the event of a finding of a statutory aggravating circumstance or circumstances beyond a reasonable doubt and no mitigating circumstances. (See, e.g., T. 708). The trial court refused to allow the "Zellmer – life option" question. (E.g., T. 132-33, 146-48, 210-11, 708-09).

- The trial court refused to permit trial counsel to question prospective jurors about their basic working or layman's definition of murder and how it would affect sentencing determinations (i.e., the "Harper Questions," named for a prospective juror whom trial counsel sought to question in this manner). An improperly broad conception of murder could lead a prospective juror to convey that he could vote

---

[8] The three options, pursuant to O.C.G.A. § 17-10-31.1, were: death, life imprisonment without the possibility of parole, and life imprisonment with the possibility of parole.

    for a sentence less than death when, in actuality, that juror has in mind a form of homicide less than murder and he really holds the view that a defendant found to have committed an act satisfying the definition of murder (under state law) must receive a death sentence.

- The trial court rejected trial counsel's variations on a question to prospective jurors that sought to ascertain whether mitigating facts concerning the defendant's background and his conduct since the offense could influence the sentencing decision "or would you base your decision only on the facts of the crime? (T. 1190, 1717). The trial court refused to permit trial counsel to ask any version of this question (i.e., the "Hester Questions," named for a prospective juror). (E.g., T. 460, 466-67).

- Finally, the trial court refused to allow trial counsel to question any prospective juror whether he would expect counsel "to produce some evidence to persuade you that the death penalty wasn't right?" (T. 1459). Trial counsel sought to ask this question (i.e., the "Snellgrove Question," named for a prospective juror), in connection to the defendants unambiguous privilege not to present evidence.

336. The trial court violated Petitioner's rights when it denied trial counsel's challenge for cause to prospective juror Gina Dawson, who repeatedly declared her intention to adhere to Biblical authority over Georgia law in the event that she were to sit on Mr. Sallie's jury. (See, e.g., T. 1971-72, 1985, 1992-95, 1996-97, 2001-02). Ms. Dawson ultimately served on the jury that convicted Mr. Sallie and sentenced him to death.

337. The trial court violated Petitioner's rights by ordering, over trial counsel's timely objection, the sequestration of Petitioner's jury. The acute misconduct in the manner of Juror

Gootee and Juror Dawson's extramarital affair immediately following the conclusion of Petitioner's trial underscores the profound implications of this error in relation to the independence and impartiality of Petitioner's jury. (Doc. 9, at 18-19 (¶ 32).

338. The trial court erred when it overruled a proper objection by trial counsel upon a prejudicial statement in the State's penalty phase closing argument concerning violations of the Sxith, Eighth and Fourteenth Amendments. (T. 4400-05).

339. The trial court violated Petitioner's constitutional rights in its election not to answer the jury's question to the court made less than two hours into the penalty phase deliberations on March 5, 2001. The jury asked: "If a prisoner receives a sentence of life without parole, are there <u>any</u> circumstances that a prisoner can ever be released from prison?" (T. 4460) (emphasis in original). Trial counsel requested the trial court to respond that Mr. Sallie "will not leave [prison] under a sentence of life without parole under any circumstances." (T. 4461). Instead of addressing the question on its terms, the court merely referred the jury, over defense objection, to its prior instructions. (T. 4463-64).

340. The trial court violated Petitioner's constitutional rights when it allowed improper trial testimony presenting prior bad acts allegedly committed by Mr. Sallie. The trial court compounded that violation when it allowed the testimony notwithstanding that the State, during the guilt/innocence phase, had given no prior notice to Petitioner that such testimony of prior bad acts or prior difficulties was going to be presented.

341. The trial court further violated Petitioner's rights by refusing to give trial counsel's requested murder instruction. (T. 3743-50, 3756-58, 3789-90).

WHEREFORE, Petitioner respectfully prays that this Court:

(a) issue an order to have him brought before it, to the end that he may be discharged from the unconstitutional confinement and restraint on the bases set forth in his Initial Petition, Supplemental Petition (Corrected), and this Amended Petition;

(b) conduct a hearing at an appropriately scheduled time where proof may be offered and argument advanced concerning the allegations set forth in his petitions;

(c) permit him because of his indigence to proceed without payment of costs;

(d) grant Petitioner sufficient funds to secure the expert and investigative assistance necessary to prove the facts as alleged in this petition;

(e) allow discovery, pursuant to Rule 6, Rules Governing §2254 Cases in the United States District Court;

(f) allow Petitioner to amend his petition after the assistance of experts and discovery, and in the event of any other changes in the law or facts relevant to his case;

(g) allow Petitioner to brief the precedential and statutory law relevant to his case in light of the record and the allegations raised by his petitions;

(h) allow Petitioner to respond to any procedural or affirmative defenses, and to any other arguments that the Respondent might raise in this action; and

(i) grant such other relief as may be necessary and appropriate.

          Respectfully submitted,

          JOSEPH J. PERKOVICH
          Church Street Station
          P.O. Box 2171
          New York, NY 10008-2171
          Tel: (212) 400-1660
          Fax: (888) 543-4964
          jjp@jos.perkovich.name

        By <u>s/ Joseph J. Perkovich</u>
          Counsel for Petitioner

January 13, 2012

## **VERIFICATION**

    I verify under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

s/ Joseph J. Perkovich<br>Joseph J. Perkovich

## **CERTIFICATE OF SERVICE**

        This is to certify that a correct copy of the foregoing document, the Amended Petition of Habeas Corpus by a Person in State Custody, was filed electronically.  Notice of this filing will be provided by cooperation of the court's electronic filing system.  Parties may access this filing through the Court's CM/ECF system.

Dated:  January 13, 2012
       New York, New York

                                                s/ Joseph J. Perkovich
                                                Joseph J. Perkovich

                                                JOSEPH J. PERKOVICH
                                                Church Street Station
                                                P.O. Box 2171
                                                New York, NY 10008-2171
                                                Tel: (212) 400-1660
                                                Fax: (888) 543-4964
                                                jjp@jos.perkovich.name